May it please the Court, Stephen Dockery on behalf of the Respondent Appellant Juan José Paramo. Appellant raises three buckets of questions for the Court today. First, was this Court's vacator and mandate followed? Second, did constitutional waiver occur? And third, were the intel factors balanced correctly? I'll start with the first, which I believe is the most important. Vacator strips the decision below of its binding effect and clears the path for future re-litigation. All rights of the parties are preserved and none is prejudiced by a decision which is only preliminary. As regards to a mandate, Matthews makes clear that the mandate should be followed in letter and spirit. This Court has ruled twice in this case, first in a per curiam published opinion where it said the original grant of 1782 subpoena relief was plainly deficient and the ex parte order issued in this case was suffered from the same deficiencies. Counselor, do I understand your argument that the District Court should not have considered what had taken place prior to the last appeal? That didn't exist? No, not as if it didn't exist. I think the Court can consider different parts of the record, but it must follow the mandate in vacator. So it can consider all that was in the record prior to the appeal as well as any additional briefing or even any evidence if there's an evidentiary hearing, it can consider anything up to the point of the second time the Court decides, isn't that correct? Correct, I believe that's true and I think in our case the vacator and mandate required that at least it could not base a constitutional waiver on a vacated proceeding at the minimum. So that gets into our next bucket, but it's not as if blinders are on and you can't look at the past. I understood the mandate to be that the Court didn't explain or sufficiently apply the relevant test in evaluating your position. That's how I understood the prior opinion. Is there more to it than I? Correct, in that it wasn't a remand without vacator, which would have caused basically a carry forward. You pick up where you left off, which is what we believe the District Court did. With vacator, we believe that's inappropriate. Let me ask you, you said you were about to get to, and I don't want to cause you to jump ahead if you're not ready to, but your self-incrimination claim, the Fifth Amendment slash Mexican law claim, aside from that, aren't your other issues on appeal abusive discretion issues? Correct, Your Honor. We think there's a de novo on the first issue of the mandate, a mixed law and fact question on the second, and then just an abuse of discretion question on the third, intel factors. That's correct. So you said the mandate issue is the most important one, but I still don't understand, in what way do you think Judge Tipton failed to follow the mandate of our 2024 decision remanding the case to him? So we believe the mandate was not followed because he has basically based the subpoena waiver on the ex parte subpoena application and the second reconsideration of the subpoena, which this court said were deficient. So basically, basing waiver on a deficient subpoena is not proper. That if all of the legal acts that... Okay, so you're saying the previous decision, the 2024 decision by Judge Wilson, right? Correct, that's right. You're saying it made a ruling with respect to the adequacy of the subpoena.  And then you're saying the district court turned around and ignored that and based a waiver ruling on the same inadequate subpoena? Correct, that's correct. Can you explain to me where in Judge Wilson's opinion he made such, because I understood it the way Judge Engelhardt did, which was, well, reasons were not given, you've got to look at reasons in a 1782 proceeding, and so we need reasons, and the district court then wrote a fairly extensive opinion. So in terms of the adequacy of the subpoena, that was specifically addressed. Where? So this court's order denying the motion to quash is plainly deficient. This is 1318 in the record, 762 in the case, because it does not meaningfully engage with any part of the 1782 inquiry. Had the court analyzed factors even summarily in the instant order denying Parama's motion or by reaffirming substantive analysis articulated in the initial 1782 petition, this would be a different case. Okay, I thought that just went to the reasons. When does it say that the subpoena itself is deficient as opposed to the reasons of the court? Oh, I'm sorry. So that the subpoena itself is deficient. So I guess that would be the suffering from the same deficiencies. Yeah, I'm just asking because it's a serious... I mean, we've had cases where the mandate rule comes up, and obviously the district court has to follow our mandate. I just didn't understand where he didn't. I read the district court opinion saying, okay, well, you need some reasons, so here's a bunch of reasons. Okay, yes, so then we'll turn to the next mandate that issued regarding the appeal of the initial finding of a waiver, which the court held our court's intervening opinion eliminated the foundational controversy that underlies this appeal and it is dismissed for one of jurisdiction. That's because there's reasons then. I'm sorry? The problem was there weren't reasons, and then once there are reasons, then it's not a problem anymore. Yeah, I know. So the basis for the second appeal is it's like mooted out because what they're arguing on has already changed. Correct, yes. Because there have been reasons given. So what's wrong with that? What's wrong with... What the district court did. That basically when the court vacated and remanded leaving the district court to weigh the party's arguments in the first instance, it should have started over to find whether a subpoena should issue in the first instance. Okay, well, all right. So if we don't agree with you on that, then you have arguments about the Fifth Amendment. Correct. So the argument on the Fifth Amendment is that it is a powerful and broadly construed right, which has a special place in our Constitution, that it is invoked on a question-by-question basis. It is considered differently from other rights. We understand all that. Where did the district court err with respect to the Fifth Amendment? The district court erred in finding waiver without inquiry. That if the district court had questions about the invocation, about other matters, I think the cases hold that it is absolutely allowed to inquire into them. But more should be done than... There's no special set of words that have to be said to invoke the right, but if the court has questions, it could look into it. First Financial, the Fifth Circuit case, I think very appropriately affirms a court's inquiry into the matter to figure out why the invocation is made and the basis for it in the suit. Those are also In Re DG and Davis and Kline. The courts are in the position... First, the challenge on appeal is whether as a matter of law they must be waived. The lower court is holding that it is not waived. But second, the courts are inquiring. Roland is also a great example. The court said you didn't assert this within 14 days. You even ignored a court order, but show me why this is relevant. That is the inquiry that should go into a constitutional right waiver. I'm a little bit confused as to what... If the court had a special master, which we've gotten notice of today or yesterday, I think, then it is actually a special master declined to opine on some things because it wanted to wait until after this appeal. It sounds like there was some argument that the special master should just go question by question with regard or document by document with regard to the personal interest but not the corporate interest. Why hasn't that already been taken care of? How is it being waived as just a broad brush? It seems like there's some consideration of possible very specific parsing, which would seem to be what you would advocate for anyway.  I think there's confusion from the special master, which is why the special master asked for clarification about what was going on. I believe it amounts to an abuse of discretion to waive and then inquire. That the inquiry should be first and then the waiver determined. The inquiry of what? Into the invocation. Because basically the court rules in their first instance review of the 1782 application says the Fifth Amendment and Mexican law privileges are waived. Well, if we went back and said, oh well, they're waived as to the corporation, but you have to either work with the master or the district court's free to have you submit in camera or whatever method the district court wants to do to evaluate the individual privileges, what harm is there in that? First, I don't think this was ever a subpoena to a corporation. So there's no corporation issue at all? There's no corporation, because that would not apply. So there's no issue at all? So it's just production privilege, humble production privilege, and then the... Independent documents, but if they're documents that are corporate documents in the mix... The parsing of that question would be the determination that should be made before a constitutional waiver is determined. So I guess turning to the specific portion of the judge's order finding waiver of the Mexican law and Fifth Amendment rights, I believe it's in direct contradiction with his later orders. But his own orders to appoint the master, I guess Judge Ho appointed the master. Correct, yes, that's much later based on a footnote in the order on the motion to stay. Well, it sounds to me like you've already gotten the relief that you sought as the case has progressed in that they're looking independently at these documents. That's what I didn't understand. To an extent, other than we have an order saying our constitutional right has been waived, which is the order of... But that doesn't make any... Why would you be doing all these individualized looking if the constitutional right is already waived as blanket matter? It seems like a lot of unnecessary time and expense, if that's what the district court's position is. Correct, correct. It doesn't... So the unwaiver occurred in a footnote on the order on the... A subsequent order. A subsequent order. So the district court has reconsidered the position, and so there's nothing... The appeal's moot, isn't it? I mean, I guess only to the extent if it has found waiver in that order where it said it did find waiver, then we need to appeal that to the... Because if it's saying you've waived it all, then we need to appeal that. If it's saying you have not waived it all, then we don't need to appeal that. But if... What does the footnote say? It says that it has not waived as to a certain set of documents, as to emails. So, I mean, I guess the special master's order is a good example in that it suggests perhaps a partial waiver is good to affect the court's prior order. So the special master's doesn't say, oh, the footnote is now my new guide, my new road star, my guiding star. It says, oh, I need to go back to the order on the motion to quash and somehow square that with this new partial... Or this footnote. So, I think when it comes to constitutional waiver, there's a higher bar and inquiry should be done before a waiver finding is made. Right, but it's not clear that anything is... What is waived at this point? It's not clear. So, if nothing's waived, then your client hasn't been harmed? Other than... If you're getting document by document parsing as to whether or not there's privilege. And if they're looking at constitutional Fifth Amendment privilege, right? It's not a different kind of privilege or something. Correct, that's right. And the addition would be the Mexican law right? Mexican law privileges, if any. Correct. But those have not been reconsidered. Perhaps your friend on the other side, Ms. Braddock, can tell us if she thinks there's been some clarification or if it's moved. And we'll hear from you on rebuttal. May it please the court. Catherine Braddock for the Appellees, the Benorte Parties. As opposing counsel has noted, this case is back following remand. The prior panel's decision ordered that the district court provide some reasoning explaining why it denied the motion to quash the subpoena issued under 28 U.S.C. 1782. One year later, we now have a reasoned opinion, a lengthy opinion from the district court explaining its decision as to why it denied the motion to quash the subpoena. This matter has been extensively litigated with parallel subpoenas in the Southern District of Texas, the Eastern District of Virginia, multiple appeals before this court and the Fourth Circuit Court of Appeals. Universally, every court that's come before has found that the statutory and discretionary factors were satisfied and discovery was appropriate. We urge this panel to reach the same conclusion and affirm the district court's opinion. Could you speak to the issue that the chief judge was asking counsel opposite about? Yes. My ears always perk up when it says the appeal might be moot. Well, so I think that mootness would only affect the Fifth Amendment argument and not the statutory.  No, sure. Yeah. It is always nice when everyone doesn't have to do any further work, but that's only for one specific issue. Yeah, well, I get it, but that's what was listed as issue number two. So, yeah, let me jump ahead to that. The Fifth Amendment issue, it does relate to the mandate issue, but essentially, I think there's been a misrepresentation of what the district court actually ruled. There in the appellant's briefing, we've seen characterizations that there was a bright line rule that because it was 14 days late, it was waived. And that leads to their mandate argument, which is essentially, well, if everything had gone back to square one, then I wasn't late and then it wouldn't have been waived. But that's not what happened below. What happened below is that they started to produce documents. They represented they were going to produce. They completely missed the 14-day deadline for objections by four months and then made this blanket assertion of privilege, copy-pasted one sentence Fifth Amendment applies as to every single document for every single request. Yeah, I mean, there's no need for history. The district court said that it's waived, Fifth Amendment's waived because of timeliness and alternatively because of specificity.  And they appointed a special master to go parse by parse through the documents. And that's what's the confusing part. That's what I'm asking about. What's going on? So, what the district court said in its footnote, and I have it here. I'll read it. The court has never held that Pyramo waived his Fifth Amendment privilege altogether. Instead, the court overruled specific objections that did not meet the standard for valid Fifth Amendment objections in the circuit. Nothing in this court's past orders prevents Pyramo from asserting valid, specific objections to the production of particular documents. So, is the Fifth Amendment privilege waived or is it not waived? The privilege that he asserted at the time, which was blanket, unspecific, done after not reviewing any of the documents, that's waived. That's off the table, and I think the district court has been very clear that that was insufficient and will not apply. Mr. Pyramo has been given second, third chances now. He really begged by the district court, the magistrate judge, and the special master, produce a privilege on, tell me document by document. We will consider that. We are happy to consider that. They're appointing a special master. So, if there's no— I think the chief's point is that that seems inconsistent with the ruling that the privilege has been waived. I think the objection has been that specific objection that was boilerplate and blanket has been waived. That's not going to apply. But he was given an opportunity to make more specific, proper objections, and that is inconsistent.  I think you waive the privilege, right? I think it may be a difference in terminology, but at the end of the day on the question of mootness, these issues are still being litigated, and there has been no conclusive determination that he has no— But there's still—the privilege is still being asserted, and it's still being evaluated. That's correct. Okay. And doesn't that seem like what normally should happen? If there hadn't been this other thing with the 14 days and all of that, then you would just merrily go with the privilege log and or the special master and or the in camera or however the district court and the magistrate judge, and you would go parse by parse the documents or categories of documents and say all these categories are waived because it's not a personal privilege or there's no Mexican law. Whatever. And that would all be taken care of in a more granular fashion, but doesn't have to be document by document. Is that what's happening now? Yes, that's precisely what's happening now. So therefore, Fifth Amendment rights are being respected to the extent they're being asserted in this granular fashion. Yes, we would agree with that.  I want to address really only briefly the mandate issue. The prior panel, which Chief Judge Arad was on, so I'll be careful not to go too far into saying what happened before. But it was vacated and remanded to provide some explanation as to what happened because the prior opinion was a three-sentence summary opinion. And the prior panel held that in denying a motion to quash under 1782, you do have to provide reasoning. So the district court held a hearing, allowed Mr. Patamon to actually file a new motion to quash, file new arguments, and then issued a 26-page reasoned opinion explaining its decision as to each of the factors. We believe that complies very squarely with the mandate of the prior panel. I also want to note on the record that Mr. Patamon and his counsel agreed at the time with the procedure followed by the district court. During the hearing that was held following remand, the district court raised the issue of mandate and said, is it okay? You know, it hasn't been quite enough days yet, is it okay for me to rule now? What other briefing do you need? And Mr. Patamon agreed with the procedure that was followed, said my record is clean and the district court can rule. And I believe that those representations foreclose this attempt to argue that something happened improperly below in terms of procedure. Now, I'd like to spend the rest of my time on the discretionary factors under Intel that the district court considered. The appellant has not raised the challenge today as to the three statutory factors, which are reviewed de novo. They are only considering the four discretionary factors, which are reviewed for abuse of discretion. And the district court has pretty wide authority in weighing those. Not all four have to be present, and it's up to the district court to decide which ones may be more relevant than others or be given more weight if not all four are present. In this case, the district court found that all four were present, and that's similar to what the Fourth Circuit found in the parallel appeal last year of a very similar subpoena in the Eastern District of Virginia. So, on the first factor, Mr. Patamon is not a participant in the Mexican proceedings. That one weighs squarely in favor of granting discovery and I believe has not been appealed. On the second factor, the receptivity of the foreign courts to U.S. assistance, the district court cited multiple decisions. There's a long line of cases in which courts frequently in Texas have dealt with these issues of discovery in aid of proceedings in Mexico. All of these decisions have found that Mexican courts are receptive to U.S. federal government assistance in discovery. The Banorte Party submitted an affidavit from Mexican counsel explaining that this evidence was expected to be admissible in court and that it would be relevant and that, in their opinion, it would be considered. Mr. Patamon did not submit any contrary evidence. On this factor, the standard that's applied from the Ecuadorian plaintiffs versus Chevron case, the 2010 case from Fifth Circuit, is that Patamon was required to submit authoritative proof that Mexican courts would reject the evidence. We haven't seen anything like that. The one argument that he's raised relates to a Mexican Supreme Court decision that he submitted after the bracing on the motion to quash. That decision involved different parties, different issues. Mr. Patamon was not a party in that decision, but that unrelated Mexican Supreme Court decision related to piercing the corporate veil under Mexican law for a freezing order against a different party and what sort of due process was required for that. It did not mention these U.S. discovery proceedings in any way, and it did not impact at all the pending civil proceedings against Mr. Patamon in Mexico, which is the civil procedures that this discovery was sought for using. So that decision truly has no relevance and did not say that the Mexican court, there's certainly not authoritative proof that the Mexican court would reject this evidence. There's not even any mention of these proceedings. As to the third discretionary factor, the application submitted by the Banorte parties did not circumvent any proof-gathering restrictions. Again, the Banorte parties submitted evidence that this discovery would likely be admissible in the Mexican court proceedings. Mr. Patamon has introduced an argument that there was a circumventing of, I guess, U.S., rather than, normally this rule for the intel factor is phrased as circumventing foreign proof-gathering restrictions. But Mr. Patamon's argument appears to be that it was circumventing domestic court, domestic proof-gathering restrictions because there was a threat at one point to filing a civil lawsuit. Most of that is, I think, frankly a moot argument. There is no pending domestic litigation. And to be honest with the court, there is unlikely to be any in the future because Mr. Patamon is in the process of being, he's in the process of removal proceedings to be deported to Mexico. So it's unlikely that there would be domestic litigation. So I do think that is a bit of a moot point. But of course, there is precedent from the Second and Eleventh Circuits that says fairly squarely, just because you get discovery under 1782 doesn't mean you can never assert domestic proceedings. Doesn't mean you can't use that evidence in domestic proceedings. There's no bar that evidence obtained here can't be used there. And there's certainly no, given that there isn't any, there isn't even any domestic proceedings today. I don't think there's a basis defined here. Contrary to what the district court held, that this evidence was secretly used to circumvent U.S. evidentiary rules. Finally, as to the fourth factor on undue burden under the Intel analysis, the district court appropriately found that the discovery did not pose an undue burden. The district court spent seven out of the 26 pages of its opinion weighing the issue of scope of the subpoena and the burden that it was posed on Mr. Paramo. Now, we have not heard, and the district court did not receive any evidence from Mr. Paramo on really what the scope of the subpoena would be or on what the burden it would be to him. Because at the time of the briefing on the motion to quash, Mr. Paramo and his counsel had not collected any documents. They didn't have an idea of what the scope would be. And there was no affidavit, no evidence of any kind submitted about what the burden would be for him. And the district court really took issue with that. Actually said it raised the rule 11 concern of the district court's mind, that you can't tell me this is overburdensome, this is an ocean-sized swath of documents. But stand before me and say, I have no idea how many documents would be responsive. I understand from the special master proceeding subsequently that we're talking about around 3,000 documents, which is, that was not before the record, I believe, in the record before the district court at the time that it was on the motion to quash. But I think after the fact supports the district court's finding that this is not an insane amount of discovery, 3,000 documents, at least in my experience, is commensurate with what I've seen in other cases. But I think of relevance here. The district court analyzed the time period of the subpoena. Note that it related to the contractual relationship and the claims between the parties that were being litigated in Mexico. The district court also noted that this was a case in which Mr. Paterno had been shown that there was evidence on the record that he was dissipating assets in multiple countries, that he was fleeing from the law in Mexico, that he'd come to the United States to escape an arrest warrant, and felt that all of those factors. And this was set up in the district court's opinion, weighed in favor of a broader discovery, considering that because this person was hiding assets, it's a lot harder to specify exact bank accounts that you want and bank accounts that you need statements for when you know that this person is opening bank accounts in secret under different names. Lastly, one of the primary burden arguments that Mr. Paterno has raised relates to the translation of documents. Both of the parties here are Mexican parties by nationality or incorporation. The proceedings are in Mexico, and the documents appear to be primarily in Spanish. None of this is a particular burden or a particular surprise. The Binorte parties have not asked Mr. Paterno to translate any documents into English. And other courts that have addressed this issue, including the Southern District of New York case, Gimaynska Praxis, I believe if I'm pronouncing it correctly, noting that in a 1782 proceeding, considering that this is a federal statute that is aimed to facilitate discovery in aid of foreign proceedings, it should not be surprising, much less considered an undue burden, that sometimes those foreign proceedings involve documents that are in foreign languages. And that's precisely the case here. Ultimately, the fact that these documents in Spanish should not on its own be considered an undue burden. And the district court did not abuse its discretion in finding them. So unless there are any further questions, I may save everyone a bit of time. I thank the panel for its time and encourage this court to affirm the district court's decision and find no abuse of discretion or any violation of its mandate. Thank you. I just wanted to touch briefly on a few issues. One, to go back to the Fifth Amendment self-incrimination issue, the Mexican law rights. I think to the extent, if this court does find the Fifth Amendment issues are moot, I think it should be as to all of the privileges. Or there should be review of the evidence submitted regarding the Mexican law right, and that's Record 1569, and whether there was an abuse of discretion in finding there was no Mexican law right regarding self-incrimination. It's a same or similar right against self-incrimination in Mexico and the United States. Second, regarding undue burden, turning to the intel factors, I believe the court is incorrect in terms of getting into the merits of the allegations against Mr. Promo. I think there's a line where the court rules that he didn't rebut the allegations against him. If 1782 proceedings become something besides the intel factors, broadening into just a litigation of the merits, I think it's defeating the purpose of the statute. The issue regarding translation I'm not sure works, because 1782 makes clear that no document shall be produced, testimony given, or other information for any privilege. And that's been held to be any privilege anywhere, and that includes domestic privileges. So if, for example, the special master needs to review the documents that are in Spanish, they have to be translated. So that just doesn't make sense. Finally, how the court applied the undue burden factors under Rule 45 and the separate undue burden test that's conducted as Banco Pueyo has made clear I think was incorrect in that the court ruled Mr. Promo had not explained how to make a more specific request. The burden is on the party seeking the documents to at least try to seek a narrow set of documents. And 1782, I believe, is in service of sets of documents to help a foreign proceeding, not a wide gather-everything expedition. Unless the panel has any other questions. Thank you. We have your argument. We appreciate the arguments on both sides. The court will stand in recess until 9 a.m. tomorrow for this panel.